## CARROLL v. HALLWOOD.

---

PATENTS; APPEALS; RES JUDICATA; AMENDMENTS.

1. An assignment of error on an appeal from the Examiner of Interferences to the board of Examiners-in-Chief in an interference proceeding, that the Examiner erred in awarding priority on the whole case to the appellee, sufficiently raises the question of *res judicata*, where, in a former interference between the same parties, the appellant recovered a judgment of priority by reason of the abandonment of the invention

by the appellee, who thereafter amended his application, which resulted in the second interference.

2. The board of Examiners-in-Chief has the right, of its own motion, to consider, to the exclusion of other matters presented, and determine on an appeal from the Examiner of Interferences, the question whether the appellant was concluded by the former judgment against him in a previous interference between the same parties.

3. A judgment of the Commissioner of Patents in an interference case in favor of one of the parties, rendered upon the abandonment by the other party of the invention of the issue, is broad enough to comprehend all claims that could have been read into the application of such other party, and, in a second interference declared upon an amendment by him of his claims, he is concluded by such former judgment against him (following *Blackford* v. *Wilder*, 28 App. D. C. 535),—especially where it is clear that the claims of both interferences are based upon the same mechanical structure.

No. 469. Patent Appeals. Submitted March 16, 1908. Decided March 31, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are stated in the opinion.

*Mr. J. B. Hayward* for the appellant.

*Mr. Paul A. Staley* and *Messrs. Bates, Fouts, & Hull* for the appellee.

Mr. Justice VAN ORSDEL, delivered the opinion of the Court:

This is an appeal [by Thomas Carroll] from the decision of the Commissioner of Patents in an interference proceedings involving certain improvements in cash registers. On May 13, 1902, interference No. 21,803 was declared between the application of [Henry S. Hallwood] appellee, No. 711,329, filed Arpil 1, 1899, and the application of appellant, No. 664,298, filed December 29, 1897. The issue in this interference was as follows:

"In a cash register, the combination with registering de-vices, of a series of operating pawls, means for locking said pawls in engagement with said registering devices, a movable frame arranged to govern said means, a spring for holding said frame in one position, and mechanism for moving said frame against the tension of the spring."

After the preliminary statements were filed, both parties filed motions to dissolve. Appellee based his motion on an alleged irregularity in the declaration of interference, in that it did not show an application by one McCormick, then pend-ing in the Patent Office, which embodied substantially the same construction as that shown by appellee's application. It was contended that, in order that the question of priority should be finally determined, McCormick's application should be in-cluded in the interference. The claims in interference were suggested to McCormick, who refused to make them, and after-wards abandoned his application. Appellant's motion to dis-solve was based upon the grounds of nonpatentability, and that no interference in fact existed. This motion was denied. Ap-pellant appealed from the decision of the Examiner of In-terferences to the Commissioner of Patents. The Commis-sioner affirmed the decision of the Examiner. Dates were set for the taking of testimony, but, before any evidence was tak-en, appellant abandoned the issue, thereby terminating the in-terference. Thereupon, on February 11, 1903, the following judgment was entered by the Commissioner of Patents upon the record: "Thomas Carroll, the senior party, having filed an abandonment of the invention defined in the issue of this in-terference in accordance with rule 125, and the same having been found to be in proper form, judgment on the record is hereby rendered in favor of Henry S. Hallwood, the junior par-ty. This instrument being construed as the waiver of the right of appeal from the decision rendered in accordance therewith, this decision becomes final, and the files are ordered to be transmitted to the Primary Examiner."

Appellant subsequently presented an amendment, setting forth the claims which formed the issue of the interference

now before us for consideration. The issues are condensed by the Commissioner of Patents into the following brief statement:

"In a cash register, the combination with a register, comprising a plurality of wheels having ratchet teeth formed on their peripheries, of operating pawls engaging said ratchet teeth, locking devices for said pawls normally locking the same to the wheels, and operating mechanism for effecting the retraction of the pawls over the ratchet teeth and subsequent advance of the pawls to turn the wheels, and means connected to said operating mechanism and arranged to engage the locking devices for withdrawing them from the pawls upon the initial movement of said operating mechanism with provision for reengaging the locking device with the pawls for the advance movement of the same."

These claims of appellant were rejected by the Primary Examiner, and an appeal was taken from the order of rejection to the board of Examiners-in-Chief. The board, on July 29, 1904, reversed the action of the Examiner, and allowed the claims of appellant. Appellant having secured the allowance of the claims which read upon the application of appellee, the Primary Examiner declared the present interference, No. 24,262. Appellee moved to dissolve the interference upon the ground of nonpatentability over the former construction disclaimed by appellant, when taken in connection with the prior art, and also upon the ground that appellant was estopped from making the amended claims by the final decision in the first interference. The Examiner of Interferences denied the motion as to the first ground, and sustained it as to the second. From this decision, appellant took an appeal to the board of Examiners-in-Chief. This tribunal, on November 10, 1905, reversed the decision of the Examiner. The case went back to the Examiner of Interferences, and evidence was taken and a hearing had on the merits. The Examiner of Interferences, on December 26, 1906, decided the case in favor of appellant, the original senior applicant. From this decision appellee

took an appeal to the board of Examiners-in-Chief, in which he set forth the following assignment of errors:

"1. The Examiner of Interferences erred in holding the issues patentable to Carroll, whereas he should have held the issues unpatentable to Carroll.

"2. The Examiner of Interferences erred in holding that Carroll has the right to make claims corresponding to the issues, whereas he should have held that Carroll has no such right.

"3. The Examiner of Interferences erred in holding, in effect, that the present case does not come under rule 130, whereas he should have held that the case does come under that rule, and that counts are patentable to Hallwood, but not to Carroll.

"4. The Examiner of Interferences erred in holding that Carroll is the prior inventor, whereas he should have held that Hallwood is the prior inventor.

"5. The examiner of Interferences erred in awarding priority on the whole case to Carroll, whereas he should have awarded it to Hallwood."

The Board of Examiners-in-Chief considered the appeal alone on the question of estoppel, and held that appellant was estopped from making the amended claims, for the reason that the final decision of the Commissioner of Patents in the first interference was *res judicata* as to the issue involved in the second interference. In so holding, the board of Examiners-in-Chief reversed their former decision, thereby affirming the first decision of the Examiner of Interferences on the second interference. From this decision of the board of Examiners, the appellant appealed to the Commissioner of Patents, who sustained the decision of the board of Examiners. From the decision of the Commissioner of Patents, appellant prosecuted this appeal. He bases his appeal upon sixteen separate assignments of error. We think the issue before us turns upon the sole question as to whether or not the final decision in the first interference is *res judicata* as to the issues involved in the second interference.

It is insisted that appellee, in his appeal from the Examiner of Interferences to the board of Examiners-in-Chief in the present interference, did not raise the question of *res judicata.* This contention, we think, is not well taken. We think the question of *res judicata* was preserved in the fifth assignment of error. That assignment, it will be observed, assails the decision of the Examiner of Interferences in awarding priority on the whole case to Carroll. If, by the final decision in the first interference, appellee acquired a judgment of priority by reason of the abandonment of the interference by appellant, the question of whether or not the final decision rendered upon the first interference is *res judicata* as between the same parties on the question of priority of the same invention in the second interference, is one that would, of necessity, be present, and of which the appellee could avail himself at any stage of the proceedings.

Assuming that the effect of the former judgment was not raised in the appeal from the Examiner of Interferences, it could be raised by the board of Examiners-in-Chief on its own motion. Therefore, the question before us is not the waiver of appellant, but of the right of the board of Examiners-in-Chief, of its own motion, to raise and consider the question of *res judicata.* We are of the opinion that it clearly had this power, and that it was the duty of the board to consider this vital question to the exclusion of the other matters presented by the appeal. Having disposed of this question, it was unnecessary for it to determine the question of priority, for that issue was determined in favor of appellee by the final decision in the former interference. The board of Examiners-in-Chief decided the case exclusively upon the ground that the final decision in the first interference was *res judicata,* and estopped appellant from asserting his claim in the second interference.

It is insisted by counsel for appellant that the subject-matter of the second issue is distinct and separable from the invention of the first issue, and that appellant, by abandoning a claim which he thereby admitted was not his, is not now

estopped from asserting his right to a new invention, which could be made the subject-matter of a separate controversy. Appellant is not here claiming a right to a new invention separable from that originally claimed. He is insisting on his right to have his present claims relate back to the date of conception and reduction to practice alleged in the former issue. All his evidence was taken with that end in view. The judgment which he permitted, by his abandonment, to be entered in the former interference, is broad enough to comprehend any and all claims that could be read into the claims originally set forth. That being true, it is not quite clear how appellant can now come in and escape the effect of that judgment by either an amendment of the former application, or by a new application for a new and separable invention, if it be such, which admittedly belongs to the same general structure, and at the same time have his invention relate back to the dates set forth in the original issue. The subject-matter of the invention here in controversy is an improvement on cash registers. The claims now advanced by appellant were proper to have been advanced in the former interference, inasmuch as they involve the same general issue. In fact it is tacitly admitted that appellant had claims in his original application drawn to include the improvement here in question. We quote from the brief of counsel for appellant, as follows: "In the present controversy Carroll is not endeavoring to go back to secure a broader claim. In fact, the first issue dominates Carroll's construction upon which he now bases his claim for the added improvement. However, this matter is directly disposed of because Carroll originally had in his case claims 2 and 4 drawn to this very timing improvement in question which has become the subject-matter of the second interference."

It was held by the tribunals of the Patent Office that the issues in both interferences involved the same invention, and that the issues in the second interference do not embody a separable invention. On this point, we fully agree with the conclusion of the Commissioner of Patents. In his opinion, he

says: "It is further contended that the claims of the present issue do not differ merely in scope from the issue of the prior interference, but that they comprehend a separable invention. This contention is clearly untenable. The claims forming the issue of this interference, as well as those which formed the issue of the prior interference, are predicated upon the same mechanical constructions." There is no issue here involved which might not have been raised in the first interference. The judgment is therefore broad enough to include the issues in both.

This reduces the question raised by the second interference clearly to one of priority. That issue was resolved by the judgment in the former adjudication in favor of appellee. What was said by this court in *Blackford* v. *Wilder,* 28 App. D. C. 535, will apply equally to this case, so far as the facts are concerned. There the court said: "To sum up: The parties are the same. The applications are the same, and disclose the invention of each issue. The constructions relied on, respectively, as evidencing conception and reduction to practice of the invention of both issues are the same. The fundamental facts of both cases are the same. Applying the well-settled principle of estoppel by judgment, before stated, it follows inevitably that the final decision in the first interference is conclusive, unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was, nor could have been, presented and determined in the first case."

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required.                         *Affirmed.*